IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| RONNIE BARHIGHT, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| | § | Civil Action No. |
| Plaintiff, | § § | |
| | § | 7:19-cv-00214-DC |
| v. | § § | |
| TERRA OILFIELD SERVICES, LLC, | § § | |
| Defendant. | § § § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Ronnie Barhight ("Named Plaintiff") on behalf of himself and all others similarly situated ("Class Members" herein) (Named Plaintiff and Class Members are collectively referred to herein as "Plaintiffs") brings this Fair Labor Standards Act ("FLSA") suit against the above-named Defendant under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended and the New Mexico Minimum Wage Act ("NM Wage Act"), N.M. STAT. § 50-4-19, *et seq*. He shows as follows:

### I. NATURE OF SUIT

1. The FLSA was passed by Congress in 1938 to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not

less than one and one-half times the regular rate at which he is employed." *Walling v. Helmerich & Payne,* 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207(a)).

2. Likewise, the NM Wage Act requires that employees who work more than forty hours in a week be paid one and one-half times their regular hourly rate for hours worked in excess of forty hours. N.M. STAT. § 50-4-22.

3. Defendant Terra Oilfield Services, LLC ("Defendant") failed to pay its operators and frac supervisors in accordance with the guarantees and protections of the FLSA and the NM Wage Act. Specifically, Defendant refuses to pay Plaintiffs for all of their work time. Specifically, Defendant refuses to pay Plaintiffs for (1) drive time before arriving and after leaving their oilfield jobsites, (2) time at the service station performing integral and indispensable work, and (3) all time on the jobsites. Because there are other putative plaintiffs who are similarly situated to the Named Plaintiff with regard to the work performed and the Defendant's compensation policies, Named Plaintiff brings his FLSA claims as an opt-in collective action pursuant to 29 U.S.C. § 216(b) and his NM Wage Act claims as an opt-out class action under Federal Rule of Civil Procedure 23.

## II. PARTIES

4. Named Plaintiff Ronnie Barhight is an individual who resides in Maverick County, Texas and was employed by Defendant within the meaning of the FLSA. Named Plaintiff was employed by Defendant from May 2018 until August 2019. He has consented to be a party-plaintiff in this action. Exhibit A.

5. The Named Plaintiff and Class Members are Defendant's current and former operators and frac supervisors who worked as such for Defendant.

6. Defendant Terra Oilfield Services, LLC is a foreign company that is authorized to do business in Texas and that is doing business in Texas. Defendant maintains its principal office in Spring,

Texas. Defendant's registered agent for service of process is Cogency Global Inc., 1601 Elm St., Suite 4360, Dallas, Texas 75201.

### III. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction in this matter because Plaintiffs assert claims arising under federal law. Specifically, Plaintiffs assert claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. This Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs' NM Wage Act claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution. Therefore, this Court has supplemental jurisdiction over Plaintiffs' NM Wage Act claims pursuant to 28 U.S.C. §1367(a). This Court also has personal jurisdiction over all parties to this action.

8. Venue is proper in the Midland Division of the United States District Court for the Western District of Texas. A substantial part of the events forming the basis of this suit occurred in Midland County and Ector County, Texas, both of which are in this District and Division. Venue in this Court is therefore proper under 28 U.S.C. § 1391(b). Named Plaintiff Barhight was an employee of Defendant and performed work for Defendant in Ector County and Midland County, Texas. Defendant does business and maintains an office in Midland County, Texas. Defendant is subject to this Court's personal jurisdiction with respect to this civil action. Defendant thus resides in this district and division. 28 U.S.C. §1391(c). Venue in this Court is therefore proper under 28 U.S.C. § 1391(b)(1).

### IV. COVERAGE UNDER THE FLSA

9. At all relevant times, Defendant has acted, directly or indirectly, in the interest of an employer with respect to Named Plaintiff and the Class Members.

10. At all times hereinafter mentioned, Defendant has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

11. At all times hereinafter mentioned, Defendant has been engaged in an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

12. At all times hereinafter mentioned Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that Defendant is an enterprise and has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

13. At all times hereinafter mentioned, Named Plaintiff and Class Members were individual "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §207 and whom Defendant at all relevant times "employ[ed]" within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

## V. COVERAGE UNDER THE NM WAGE ACT

14. At all times hereinafter mentioned, Defendant has been an "employer" within the meaning of Section 50-4-21(B) of the NM Wage Act.

15. At all times hereinafter mentioned, Named Plaintiff and the NM Class Members (defined below) were individual "employees" within the meaning of Section 50-4-21(C) of the NM Wage Act, and whom Defendant at all relevant times "employ[ed]" within the meaning of Section 50-4-21(A) of the NM Wage Act.

## VI. FACTUAL ALLEGATIONS

### A. Violations

16. Defendant is an oilfield services company that provides water to oilfield frac sites in Texas and New Mexico. Defendant employs operators and supervisors to maintain and operate water lines and pumps to bring water to frac sites.

17. Defendant has an office in Midland, Texas and performs work in Midland County.

18. Named Plaintiff was hired by Defendant as an operator in May 2018. After approximately one month, he moved into a frac supervisor role and remained in that role until he left Defendant's employment in August of 2019.

19. Throughout his employment, Defendant paid Named Plaintiff by the hour and not on a salary-basis.

20. Defendant paid all of its operators and frac supervisors by the hour and not on a salary-basis.

21. Defendant classifies its operators and frac supervisors as FLSA and NM Wage Act non-exempt employees, meaning they are entitled to overtime for hours worked over forty hours per week.

22. Named Plaintiff performed work in the Permian Basin, based out of either Carlsbad, New Mexico or Midland, Texas. Defendant maintained man camps in both locations.

23. Defendant divides the workday into two, twelve hour-shifts, from 5:30 to 5:30. Regardless of whether Named Plaintiff was working out of Carlsbad or Midland, his daily routine, and the routine of the operators and frac supervisors, was the same. The day started with the crew of operators and frac supervisors meeting up at the man camp—or for a short period in Carlsbad, at a hotel where the employees were staying temporarily—at approximately 3:45 (either AM or PM depending on whether it was a day or night shift). The operators would load into company-vehicles driven by either operator(s) or frac supervisor(s) and drive to a service station in the city, either

Midland or Carlsbad, within fifteen minutes of leaving the mancamp. There were either one or two frac supervisors per shift.

24. At the service station, the operators and frac supervisors would perform various tasks that were integral and indispensable to Plaintiffs' principal activities for which Defendant employed and employs them, including:

    - Filling the company vehicle with fuel;
    - Filling 5 and 15 gallon gas canisters with unleaded fuel for use on the jobsite;
    - Filling supplemental fuel tanks with diesel fuel for use on the jobsite;
    - Conducting vehicle inspections, including checking the coolant and oil level of the company vehicle; and
    - Performing any necessary maintenance on the company vehicle.

25. The fuel canisters and supplemental fuel tanks filled at the service station were used to fill the vehicles that remained on the jobsite throughout the job. Those vehicles were left running during the shift and were occupied by the crew, including as a means of air conditioning. The vehicles driven to and from the jobsite were also used at the jobsites, were also left running throughout the day, and were occupied by the crew throughout the shift. The diesel fuel from the supplemental fuel tank was necessary to run the pumps on the job sites. The vehicles were also used on the jobsite to ferry diesel fuel between onsite fuel cells and the diesel engine-driven water pumps use in the fracking process.

26. From the service station, the crew, driven in a company vehicle by a frac supervisor or operator, would continue to the job site, typically arriving between approximately 5:00 and 5:15 (either AM or PM, depending on whether it was a night or day shift). Upon the arriving at the jobsite, the driver dropped off the operators at pumps along the water line from the main water source, usually separated by about one mile from another. The frac supervisor or operator running that frac pump

then drove to the frac site on the jobsite for a mandatory 5:30 (AM or PM) safety meeting with the customer's company-man and all representatives from onsite third-party companies, which typically included approximately thirty or more individuals. These meetings lasted between 15 and 30 minutes.

27. When that meeting was complete, the frac supervisor(s) had a 5-10 minute debrief with the frac supervisor or operator running the frac pump from the previous shift. Thereafter, the prior shift's driver drove around the site to pick up the operators at their various pump locations and then returned to the man camp (or, for a short period in Carlsbad, to the hotel). The crew typically left the jobsite to return to either Carlsbad or Midland between 6 and 6:15 (either AM or PM, depending on whether it was a night or day shift). Occasionally, the crew stopped on the way home to fill up the supplemental fuel tank with diesel fuel in order to prepare for the next day's work. The crew typically arrived back in Carlsbad or Midland between 7 and 7:30.

28. Therefore, each crew was typically on the jobsite from approximately 5-5:15 until 6-6:30 (either AM or PM, depending on whether it was a night or day shift) each day, for a total of 13-14.5 hours. And, including drive time and time spent at the service station, the work-day was approximately 3:45 to 7:00-7:30, for more than 15 hours per day.

29. The operators and frac supervisors, including Named Plaintiff and the Class Members, did not receive uninterrupted meal breaks. Rather, they ate while working.

30. Defendant had a policy and practice of failing and refusing to pay Named Plaintiff and Class Members for any more than 12.5 hours per day worked or—on rare occasions—13 hours per day worked. That is, Defendant had a policy and practice of failing and refusing to pay Plaintiffs for all of their work time.

31. Named Plaintiff and Class Members worked long hours. Named Plaintiff typically worked at least fourteen hours per day and, in weeks where he performed work, more than forty hours in a week.

32. Therefore, Defendant failed to compensate Named Plaintiff and the Class Members at the appropriate overtime rate time spent at the service station, driving time, and job site time.

33. For example, during the workweek from July 21, 2019 to July 27, 2019, Named Plaintiff's total hours worked was 95.5 hours. But Defendant paid him for just 81.5 hours. Therefore, Defendant failed to compensate him for 14 hours of overtime work during that week.

34. In the performance of their work, Plaintiffs handle tools, equipment, and other equipment and materials that were manufactured outside of the state in which they were performing work.

35. For all times relevant to this action, as operators and frac supervisors, the Plaintiffs' primary job duty for the Defendant has been the performance of manual, non-management work. The Plaintiffs' primary job duty is not the performance of office or non-manual work directly related to Defendant's management or general business operations or those of its customers.

36. The job duties of the operators and frac supervisors at each of the Defendant's locations was and is essentially the same. As a result, each operator and frac supervisor performed the same or similar job duties throughout Defendant's operations.

37. The daily and weekly activities of Plaintiffs were routine and largely governed by standardized plans and procedures created by Defendant. Virtually every job function was predetermined by Defendant, including the schedule of work and related work duties. The Plaintiffs were prohibited from varying their job duties outside of the predetermined parameters.

38. Plaintiffs did not direct the work of two or more employees at any time during their employment as operators or riggers. Plaintiffs did not have the authority to hire or fire other employees, and their suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees were not given particular weight.

39. Plaintiffs did not perform work that required knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; and they do not perform work in a recognized field of artistic or creative endeavor.

40. The vehicles driven by the frac supervisor Class Members, including Named Plaintiff, had a gross vehicle weight rating of 10,000 pounds or less. Plaintiffs performed work with, on, and in these vehicles during each week of their employment. These vehicles are equipped with GPS monitoring devices.

41. Defendant did not pay Named Plaintiff or Class Members on a salary or a fee basis pursuant to 29 C.F.R. §541.600. Instead, Defendant paid Named Plaintiff and Class Members on an hourly basis.

42. Defendant's operators and frac supervisors are FLSA and NM Wage Act non-exempt positions.

43. Defendant was aware that Plaintiffs were performing work outside of their recorded hours. But Defendant did not and does not compensate Named Plaintiff or Class Members for any time other than the time they spent at the jobsite. In particular, Defendant does not compensate Named Plaintiff or Class Members for all of their time at the jobsites or any of their time driving after the first work of the day and before the last work of the day.

44. As a result, Defendant failed and refused to pay Named Plaintiff and Class Members for all overtime hours they worked.

45. Defendant has employed and is employing other individuals as operators and frac supervisors who have performed the same job duties under the same pay provisions as Named Plaintiff, in that they have performed, or are performing, the same job duties, and have consistently worked in excess of forty hours in a workweek and have been denied pay for work at service stations, drive time, and jobsite work.

46. Defendant has knowingly, willfully, or with reckless disregard carried out, and continues to carry out, its illegal pattern or practice of failing to pay overtime compensation to Named Plaintiff and

the Class Members.

**B. Defendants' denial of pay for overtime constitutes continuing course of conduct.**

47. In 2009, the New Mexico 49th Legislature unanimously passed—and the governor signed—House Bill 489. House Bill 489 became effective June 19, 2009. With House Bill 489's passage, the statute of limitations for wage claims, including unpaid overtime claims, under the NM Wage Act was extended from one year to three years. NMSA 1978 § 37-1-5. Also, effective June 19, 2009, the statute of limitations under the NM Wage Act is eliminated when the violation is part of a "continuing course of conduct." *Id.* § 50-4-32.

48. Since before Named Plaintiff began working for Defendant and continuing through today, Defendant has maintained a policy and practice of failing and refusing to pay Named Plaintiff and Class Members for any more than 12.5 hours per day worked or—on rare occasions—13 hours per day worked. And even though operators and frac supervisors work more than that prescribed amount—and those hours constitute overtime hours—Defendant did not pay Named Plaintiff or the Class Members at an overtime rate for those hours over 12.5 in a day.

49. Defendant's continued refusal to pay for all of the Plaintiffs' compensable work time constitutes a continuing course of conduct.

## VII. COLLECTIVE ACTION ALLEGATIONS

50. Named Plaintiff and the Class Members performed the same or similar job duties as one another in that they worked as, and performed the duties of, operators and frac supervisors in Defendant's worksites in Texas and New Mexico. Further, Named Plaintiff and the Class Members were subjected to the same pay provisions in that they were all paid on an hourly basis but were not compensated at the rate of at least one and one-half their regular rates of pay for all hours worked in excess of 40 in a workweek. More specifically, Defendant knowingly refused to pay Named Plaintiff and the Class Members for more than 12.5 hours per day, or on rare occasions, 13 hours

per day, which did not include all drive time, time at a service station, or even all of the jobsite time. Thus, the Class Members are owed unpaid overtime for the same reasons as Named Plaintiff, without regard to their individualized circumstances.

51. This policy or practice is and was applicable to the Named Plaintiff and all Class Members. Application of this policy or practice does not depend on the personal circumstances of the Named Plaintiff or those joining this lawsuit. Rather, the same policy or practice that resulted in the non-payment of overtime compensation to Named Plaintiff also applied to all Class Members. Accordingly, the "Class Members" are properly defined as:

> **All current and former operators or frac supervisors of Defendant in the last three years who were paid by the hour.**

### VIII. NM WAGE ACT RULE 23 CLASS ALLEGATIONS

52. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Named Plaintiff, individually and on behalf of all other similarly situated employees, pursues NM Wage Act claims against Defendant.

53. Named Plaintiff seeks certification of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "NM Class Members") as follows:

> **All current and former operators or frac supervisors of Defendant who were paid by the hour and who worked for Defendant in New Mexico in at least one workweek since June 19, 2009.**

54. Named Plaintiff, individually and on behalf of all other similarly situated employees, seeks relief on a class basis challenging Defendant's practice of refusing to pay Named Plaintiff and the Class Members for more than 12.5 hours per day, or on rare occasions, 13 hours per day and therefore failing to pay Named Plaintiff and other similarly situated employees one and one-half times their regular hourly rate of pay for all hours worked over forty in a workweek.

55. Named Plaintiff and the NM Class Members performed the same or similar job duties as one another in that they worked as, and performed the duties of, non-exempt employees, namely

operators and frac supervisors, on Defendant's worksites in New Mexico. Further, Named Plaintiff and the NM Class Members were subjected to the same pay provisions in that they were all paid by the hour and were not paid for more than 12.5 hours per day, or on rare occasions, 13 hours per day, despite working more than 12.5 to 13 hours per day.

56. Defendant's failure to compensate employees for hours worked in excess of 40 in a workweek as required by the NM Wage Act results from a policy or practice refusing to pay Named Plaintiff and the Class Members for more than 12.5 hours per day, or on rare occasions, 13 hours per day. This policy or practice is applicable to the Named Plaintiff and all NM Class Members. Application of this policy or practice does not depend on the personal circumstances of the Named Plaintiff or those joining this lawsuit. Rather, the same policy or practice that resulted in the non-payment of overtime compensation to Named Plaintiff also applied to all NM Class Members.

57. Throughout the relevant period, Defendant knew that Named Plaintiff and NM Class Members were not being properly compensated for all of their hours worked.

58. Defendant maintained common work, time, and pay policies and procedures for its operators and frac supervisors based out of and working in New Mexico. As a result, Named Plaintiff and NM Class Members are similarly situated and have been regularly deprived of pay for workweeks during which they worked more than forty hours.

59. Plaintiffs' NM Wage Act claims against Defendant satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements for the certification of a class action under Federal Rule of Civil Procedure 23.

60. **Numerosity.** The class satisfies the numerosity standard as it is believed that there are approximately 100 NM Class Members, including current and former employees. Consequently, joinder of all NM Class Members in a single action is impracticable. The data required to calculate the size of the class is within the control of Defendant.

61. **Commonality.** There are questions of law and fact common to the class that predominate over any questions affecting individual members. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

    a) Whether Defendant's common policy of paying for only 12.5 hours of work per day or, on rare occasions, 13 hours of work per day deprived its operators and frac supervisors proper overtime compensation.

    b) Whether Defendant violated the NM Wage Act by failing to pay for time worked at the service station;

    c) Whether Defendant violated the NM Wage Act by failing to pay for drive time after the first work, and before the last work, of the day;

    d) Whether Defendant violated the NM Wage Act by failing to pay for all jobsite time;

    e) Whether Defendant's violation of the NM Wage Act constituted a continuing course of conduct; and

    f) The proper measure of damages sustained by the NM Class Members.

62. **Typicality**. Named Plaintiff's claims are typical of those of the class because Named Plaintiff's claims arise from the same course of conduct and legal theories as the claims of the prospective NM Class Members. Like the NM Class Members, Named Plaintiff worked as a non-exempt employee on Defendant's New Mexico jobsites.  Like the NM Class Members, Named Plaintiff regularly worked in excess of forty hours per week.  Like the NM Class Members, Named Plaintiff was not paid for all of his work time due to Defendant's policy of paying for only 12.5 hours of work per day or, on rare occasions, 13 hours of work per day.  The other facts outlined above likewise apply equally to both Named Plaintiff and the NM Class Members.

63. **Adequacy**. Named Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the NM Class Members he seeks to represent. The interests of the

members of the class will be fairly and adequately protected by Named Plaintiff and the undersigned counsel, who have experience in employment and class action lawsuits.

64. **Superiority.** A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the class could afford to pursue individual litigation against a company the size of Defendant, doing so would unduly burden the court system. Individual litigation of many of these claims would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the class would create risk of inconsistent and varying judicial results and establish incompatible standards of conduct for Defendant. A single class action can determine the rights of all NM Class Members in conformity with the interest of efficiency and judicial economy.

### IX. CAUSE OF ACTION ONE: FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT

65. During the relevant period, Defendant violated Section 7 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2), by employing employees, including Named Plaintiff and the FLSA Class Members, in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as stated herein above, for workweeks longer than 40 hours without compensating such employees for their work in excess of forty hours per week at rates that are not less than one-and-one-half times their regular rates for which they were employed. Defendant has acted willfully in failing to pay Named Plaintiff and the Class Members in accordance with applicable law.

### X. CAUSE OF ACTION TWO: FAILURE TO PAY WAGES IN ACCORDANCE WITH NEW MEXICO MINIMUM WAGE ACT

66. During the relevant period, Defendant violated the New Mexico Minimum Wage Act, N.M. STAT. § 50-4-22 (West 2018), by employing employees, including Named Plaintiff and the NM Class

Members, for workweeks longer than 40 hours without compensating such employees for their work in excess of forty hours per week at rates that are not less than one-and-one-half times their regular hourly rate. Defendant's violation of New Mexico Minimum Wage Act occurred as part of a continuing course of conduct.

## VIII. PRAYER FOR RELIEF

WHEREFORE, cause having been shown, Named Plaintiff prays for judgment against Defendant as follows:

a. For an expedited Order certifying a class and directing notice to putative class members pursuant to 29 U.S.C. § 216(b);

b. For an Order certifying the NM Wage Law claims as a class action pursuant to Fed. R. Civ. P. 23, for designation of Named Plaintiff as Class Representative, and for designation of Plaintiff's counsel as class counsel;

c. For an Order pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b), finding Defendant liable for unpaid back wages due to Named Plaintiff (and those who have joined, or may join the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Named Plaintiff (and those who have joined, or may join the suit);

d. For an Order awarding Named Plaintiff and the NM Class Members damages pursuant to N.M. Stat. 50-4-26;

e. For an Order awarding Named Plaintiff and the NM Class Members damages for all violations, regardless of the date on which they occurred, as a result of Defendants' continued course of conduct pursuant to N.M. Stat. Ann. 50-4-32;

f.  For an Order awarding Named Plaintiff (and those who have joined or may join the suit) the taxable costs and allowable expenses of this action;

g.  For an Order awarding Named Plaintiff (and those who have joined or may join the suit) attorneys' fees; and

h.  For an Order awarding Named Plaintiff (and those who have joined or may join the suit) pre-judgment and post-judgment interest at the highest rates allowed by law;

i.  For an Order awarding Named Plaintiff declaratory and injunctive relief as necessary to prevent the Defendant's further violations, and to effectuate the purposes, of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*.; and

j.  For an Order granting such other and further relief, at law or in equity, as may be necessary and/or appropriate.

Respectfully Submitted,

**MORELAND VERRETT, P.C.**
The Commissioners House at Heritage Square
2901 Bee Cave Road, Box L
Austin, Texas 78746
Tel: (512) 782-0567
Fax: (512) 782-0605

By: */s/ Daniel A. Verrett*
     Daniel A. Verrett
     Texas State Bar No. 24075220
     daniel@morelandlaw.com

Edmond S. Moreland, Jr.
State Bar No. 24002644
edmond@morelandlaw.com
700 West Summit Drive
Wimberley, Texas 78676
(512) 782-0567
(512) 782-0605 - telecopier

**ATTORNEYS FOR PLAINTIFFS**